UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JCB, INC., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|   v. | )  Case No. 4:03CV1355 RWS |
| | ) |
| UNION PLANTERS BANK, N.A., et al., | ) |
| | ) |
|    Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before me on Union Planters Bank, N.A.'s, ("Union Planters") Motion to Strike Expert Testimony of Richard Grinder [#26]. The motion will be denied.

### **BACKGROUND**

The remaining issue in this case is the amount of damages that Union Planters owes JCB, Inc., ("JCB") for trespass and the conversion of JCB's property. Most of the issues in this case have been decided by the bankruptcy court. The factual history of this case, as found by the bankruptcy court, is as follows:

> JCB and Machinery[, Inc., ("Machinery")] entered into a financing arrangement in 1996 whereby JCB financed Machinery's purchase of equipment and parts manufactured by JCB (the "JCB Financing Agreement"). Machinery granted JCB a purchase money security interest in all ". . . equipment, machines, products, attachments and parts manufactured or sold by JCB and all proceeds thereof" to secure its obligation to JCB under the JCB Financing Agreement (the "JCB Security Agreement"). The JCB Security Agreement also contained an afteracquired property clause that gave JCB a purchase money security interest in any property of the type listed in the JCB Security Agreement that Machinery may acquire in the future. JCB properly perfected its security interest contained in the JCB Security Agreement.

> Union Planters extended a line of credit to Machinery in March, 2000. Machinery executed a series of promissory notes in favor of Union Planters in exchange for the line of credit. Machinery secured its obligations under the promissory notes by

granting Union Planters a security interest in specific items as well as a blanket lien on Machinery's inventory, accounts and proceeds from the inventory, which Union Planters properly perfected. (the "Union Planters Financing Agreement").

Machinery filed a petition for relief under Chapter 11 of the United States Bankruptcy Code on March 29, 2001. Machinery did not execute a new security agreement post-petition in favor of JCB or Union Planters. JCB continued to provide Machinery with post-petition financing to facilitate Machinery's purchase of equipment from JCB. Machinery filed the Plan on August 28, 2001. [The Bankruptcy Court for the Eastern District of Missouri] confirmed the Plan in an order dated October 5, 2001. The Plan contains the following provisions relating to the parties' relative interest in the Collateral.

Concerning the Plan's treatment of JCB's security interest in Machinery's assets, Section 2.11 of the Plan states that JCB possessed a secured claim against Machinery's estate in an amount equal to the value of "Debtor's Equipment on which it holds a purchase money security interest". Sections 3.4.9 and 3.6 of the Plan recited that JCB's claim against Machinery's estate was fully secured in the amount of $456,879.40 and Machinery would pay the claim in full. The Plan further provided in Section 3.4.14.b that all pre-petition documents executed by Machinery shall remain in full force and effect post-confirmation.

With respect to Union Planters' interest in Machinery's assets, Section 3.7 of the Plan gave Union Planters a first priority secured position in all of Machinery's equipment, except that Union Planters' security interest would be junior to any perfected purchase money security interest in Machinery's assets. Section 3.7 further provides that no party shall hold a security interest in Machinery's post-confirmation assets except for Union Planters and ". . . any secured creditor, with respect only to specific items and accounts receivable stemming from the sale . . . of any collateral on which it holds a properly perfected security interest."

After the [Bankruptcy Court for the Eastern District of Missouri] confirmed the Plan, JCB continued to provide Machinery with equipment under the terms of the JCB Financing Agreement. And Machinery acquired the Collateral at issue here post-confirmation.

Machinery defaulted on its obligation to its secured creditors under the Plan shortly after confirmation. And in April, 2003 Machinery notified all of its secured creditors, including both JCB and Union Planters, that it was ceasing operations and winding up its business affairs. Machinery surrendered most of the machines that were subject to JCB's security interest (the "Machine Collateral") to JCB on March 10, 2003. JCB placed the Machine Collateral on its lot (the "Lot") and planned to sell the equipment through its dealer system. Machinery also retained

some of the Machine Collateral on its real property.

> Union Planters, through its agent ATEC, Inc. ("ATEC"), entered upon the Lot on May 12, 2003 and removed the Machine Collateral without the consent of JCB. ATEC also removed several machine parts that were subject to JCB's security interest (the "Parts Collateral") from the Lot. Machinery sold the remaining Machine Collateral to third-parties. Union Planters notified JCB on June 12, 2003 that it intended to sell the Machine Collateral at a public auction. JCB replied to Union Planters' notification by remitting a letter to Union Planters dated July 15, 2003 demanding that Union Planters not conduct the sale and immediately return the Machine Collateral to JCB. Union Planters refused JCB's demands and ATEC conducted the auction of the Machine Collateral on behalf of Union Planters on July 17, 2003 (the "Public Auction"). The sale of the Machine Collateral at the Public Auction yielded approximately $838,500.00, net of ATEC's fees.
>
> Union Planters also arranged for ATEC to sell the Parts Collateral at a private sale on August 18, 2003. As with the Machine Collateral, JCB demanded that Union Planters immediately deliver the Parts Collateral to JCB in a letter dated July 18, 2003. Union Planters refused JCB's demand and ATEC conducted the private sale of the Parts Collateral on August 18, 2003 (the "Private Sale").

In re Machinery, Inc., 337 B.R. 368, 370-71 (Bkrtcy. E.D. Mo. 2005).

The bankruptcy court granted summary judgment in favor of JCB and against Union Planters on JCB's claims for trespass and conversion. JCB wishes to introduce opinion evidence on the value of the Machine Collateral Union Planters sold at the Public Auction. JCB intends to introduce the opinion testimony of Richard Ginder that the fair market value of the Machine Collateral was approximately 25% greater than the amount obtained at the Public Auction.

Union Planters has moved to strike Ginder's opinion testimony. Union Planters argues that the testimony is based on faulty methods and should be stricken pursuant to Fed. R. Evid. 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Union Planters also argues that the testimony is irrelevant and potentially prejudicial and should be excluded under Fed. R. Evid. 403.

JCB argues that Union Planters' motion is not actually a Daubert motion, but that it goes to relevance. JCB further argues that the motion is therefore premature because rulings on the admissibility of evidence should be handled via motions in limine or objections at trial.

**ANALYSIS**

*Conversion Damages*

"The measure of damages in an action for conversion of personal property is generally the fair market value of the property at the time and place of the conversion. 'Fair market value' is defined as the price that property will bring when it is offered for sale by an owner who is willing but under no compulsion to sell and is bought by a buyer who is willing or desires to purchase but is not compelled to do so." Bell v. Lafont Auto Sales, 85 S.W.3d 50, 54 (Mo. Ct. App. 2002).

In Missouri, "an owner of property may establish the value of such property through his opinion testimony." Coffman v. Powell, 929 S.W.2d 309, 312 (Mo. Ct. App. 1996). It is for the jury to decide whether the opinion testimony is credible. E.g., DeLong v. Hilltop Lincoln-Mercury, Inc., 812 S.W.2d 834, 841-42 (Mo. Ct. App. 1991) ("The jury is free to believe all, part, or none of the [opinion] testimony presented, and are the sole arbiters of its weight.").

*Union Planters' Motion to Strike*

Union Planters argues that Ginder's opinion testimony is unreliable because Ginder calculated the price that a dealer within JCB's network would have been able to sell the Machine Collateral for to an end user. Union Planters argues that the end user price is unreliable because JCB never intended to sell the Machine Collateral to the end user. Rather, Union Planters argues that JCB intended to sell the Machine Collateral to one of its dealers for the wholesale price.

Although not articulated by Union Planters, the issue of whether Ginder was correct to

calculate the amount an end user would have paid for the Machine Collateral goes to whether he considered the correct "market" in his analysis. That is, if the amount of damages is the "fair market value" of the Machine Collateral, then it follows that the opinion testimony should be relevant to the market in which the goods would have been sold by the willing owner. It may or may not be that Ginder's testimony is relevant to the market JCB would have sold the Machine Collateral in had it had the chance. But it is premature for me to make that determination.

I agree with JCB that Union Planters's argument is not a <u>Daubert</u>-type argument, but is rather an argument about the relevance of Ginder's testimony. As a result, I will deny the motion. I will reserve ruling on whether Ginder's testimony is admissible until that issue is properly before the Court.

Dated this 30th day of March, 2006.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE