UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


JCB, INC.,                                    )
                                              )
          Plaintiff,                          )
                                              )
     vs.                                      )          Case No. 4:03CV01355 RWS
                                              )
UNION PLANTERS BANK, N.A. and,                )
MACHINERY, INC.                               )
          Defendants.                         )


## MEMORANDUM AND ORDER

This matter is before me on Defendant Union Planters Bank's Motion for Judgment as a
Matter of Law, for New Trial and/or to Remit Damages [#86]. For the reasons set forth below, I
will deny Union Planters Bank's Motion.

**FACTUAL BACKGROUND**

Viewing the facts in the light most favorable to the prevailing party, JCB, Inc., the facts
are as follows:

JCB, Inc. is a manufacturer and distributor of heavy construction and agricultural
equipment. Machinery, Inc. was an authorized JCB dealer in St. Louis, Missouri.

Early in 2003, Machinery, Inc. was in severe financial distress.  In its efforts to help
Machinery, JCB, Inc. provided current model-year equipment, spare parts and floorplan
financing.  At the same time, Union Planters Bank was continuing to seek payment of
Machinery's debt to the Bank.  These collection efforts had been ongoing since Machinery's
Chapter 11 bankruptcy filing in 2001.  Union Planters Bank had not made any loans to
Machinery since 2001.  By 2003, Machinery's loan balance at Union Planters was zero.
However, Machinery had a continuing obligation to Union Planters Bank for attorneys fees and

any contingent liability of Union Planters Bank which may result from ongoing litigation with General Electric Capital Corporation.

In March 2003, much of Machinery's debt to JCB was due under the floorplan arrangement, so JCB and Machinery, through Chris Clark and David Kopp respectively, worked out an arrangement on the JCB equipment collateral. JCB leased ground adjacent to Machinery. JCB took possession of the 23 remaining pieces of JCB equipment and moved the equipment to the JCB lot. By moving the equipment onto the lot leased by JCB, JCB maintained possession of its collateral under the security agreement, yet was able to provide an opportunity for Machinery to continue marketing the equipment under limited circumstances. Clark and Kopp established specific conditions for Machinery's access to the lot to facilitate the mutual business interests of JCB and Machinery. Both Clark and Kopp testified that the deal was based on trust between JCB and Machinery.

Ultimately, Machinery did not survive. Machinery arranged a meeting of all of its secured creditors on April 29, 2003 at the Machinery dealership. Clark was there for JCB, along with Kopp representing Machinery and Robert Korte representing Union Planters Bank. By that date, the JCB equipment collateral had been removed from the Machinery dealership and was sitting on JCB's leased lot. The JCB lot was clearly visible to everyone at the meeting. The stated purposes of the meeting were to close down Machinery, wind down its operations, and address the collateral of each secured party. No one from Union Planters Bank or Machinery, including their lawyers who were present, objected to the fact that JCB had removed the JCB equipment collateral to the JCB lot. Likewise, no one from the bank or Machinery expressed any opinion to Clark that JCB's lien on the equipment collateral was in any way questionable, defective, or junior to that of any other party.

Within 10 days of the wind-down meeting, on May 9, 2003, and without any notice or authorization, Union Planters Bank caused its agent to enter upon JCB's lot and remove the equipment JCB had repossessed pursuant to JCB's security interest. Union Planters Bank's officer in charge, Korte, admitted that he directed this action to be taken by the Bank without checking with anyone else at the bank, and knowing that the lot was *not* Machinery's, but rather was leased by JCB. Korte did not check with Kopp about the arrangement Machinery had with JCB. Despite having met Chris Clark, Korte did not contact Clark or anyone else at JCB. Korte admitted that he had decades of experience in handling troubled loans and repossessions for the bank and was familiar with legal procedures to obtain bonded replevin orders for repossessions, but in this case he chose not to use such procedures. Instead, the bank "helped itself" by entering JCB's property to take possession of property that it knew JCB had put there for safekeeping. Union Planters Bank took this action unilaterally without consultation or notice to JCB or Machinery. Kopp admitted at trial that he was "surprised" when he learned, after the fact, what the bank had done to JCB, and he alone called Clark.

Korte testified at trial about Union Planters Bank's motivations. Korte claimed Union Planters Bank acted in good faith on a mistaken belief that the Bank's lien was superior to JCB's security interest. Korte admitted that he saw the JCB equipment as a way to benefit the bank by seizing possession of more assets and putting them under control of the bank. Korte testified that he believed the bank could use Machinery's assets under the Machinery Chapter 11 Plan to fund Union Planters Bank's attorneys' fees and any contingent liability of Union Planters Bank in ongoing litigation with General Electric Capital Corporation.

After seizing JCB's equipment collateral from the JCB lot, Union Planters Bank's demanded that JCB concede that Union Planters Bank's lien had a priority over JCB's lien.

Union Planters Bank ignored JCB's written proposal for a resolution, which included an offer to sell the equipment through traditional JCB dealership channels to obtain the maximum price, with the proceeds to be held in escrow and subject to later agreement or court resolution. Union Planters Bank refused to speak with JCB's president regarding the written proposal and never made a counterproposal.

Union Planters Bank also ignored JCB's written demand that the equipment collateral not be sold at auction and that the equipment be returned to JCB. At the auction, the Bank expressly represented to all bidders that it would deliver good title to the purchaser and stand behind such a warranty of title, all the while knowing of JCB's asserted security interest in the property. As a result, the Bank agreed to protect purchasers at the auction through a warranty of title, while disputing JCB's claims and refusing to provide any protection for JCB's interest.

Union Planters Bank, with full knowledge of JCB's claim of a superior lien, converted the equipment to cash through a liquidation auction. The proceeds from the auction totaled $839,000. The bank did not place the funds in escrow or to enter into any other arrangement that would provide joint control pending resolution of the dispute with JCB.

At trial, Korte admitted that more than $100,000 of the funds had been used to pay the bank's attorneys' fees. Even after the United States Bankruptcy Court held that JCB's lien was superior, the bank did not remit to JCB any funds from the auction, interplead the funds, or otherwise put them under joint control.

**PROCEDURAL BACKGROUND**

This action was initially referred to the United States Bankruptcy Court for a determination of the priorities among creditors under Machinery's confirmed bankruptcy plan of reorganization. United States Bankruptcy Judge David McDonald found that JCB had a valid

security interest in the equipment of Machinery, Inc. that is the focus of this case, and that JCB's security interest was senior to that of Union Planters Bank. Judge David McDonald then determined that Union Planters Bank was liable to JCB for both trespass and conversion for removing JCB's equipment from the lot leased by JCB.  In re Machinery, Inc., 337 B.R. 368, 373 (Bankr. E.D. Mo. 2005) (hereinafter "Machinery").   The reference to the United States Bankruptcy Court was withdrawn and the case was tried to a jury on the remaining issue of the amount to be awarded to JCB as damages for the trespass and conversion.

Following a three day jury trial, the jury returned a verdict finding damages to JCB as follows:  On the conversion claim, the jury awarded  compensatory damages based on the fair market value of the 23 pieces of equipment of $1,100,000.  The jury also awarded interest in the amount of $346,500.  On the conversion claim, the jury found Union Planters Bank liable for punitive damages in the amount of $1,150,000.  On the trespass claim, for compensatory damages relating to the diminution in the fair market value of the property, the jury, consistent with the jury instruction, assessed the nominal amount of $1.00.  On the trespass claim, the jury also found the Bank liable for punitive damages in the amount of $1,087,500.

Union Planters Bank filed the present motions seeking relief from the jury verdicts against the Bank.

**JUDGMENT AS A MATTER OF LAW**

Union Planters Bank argues that I should set aside the jury verdict and enter judgment as a matter of law for the Bank.

### Legal Standard

The Eighth Circuit has explained that "judges must be extremely guarded in granting judgments as a matter of law after a jury verdict."  Ryther v. KARE 11, 108 F.3d 832, 844 (8th

Cir.) (en banc), cert. denied, 521 U.S. 1119 (1997);  see also Reeves v. Sanderson Plumbing

Prods., Inc., 530 U.S. 133, 150-51 (2000).  Accordingly,

> [T]he district court must (1) consider the evidence in the light most favorable to
> the prevailing party, (2) assume that all conflicts in the evidence were resolved in
> favor of the prevailing party, (3) assume as proved all facts that the prevailing
> party's evidence tended to prove, and (4) give the prevailing party the benefit of
> all favorable inferences that may reasonably be drawn from the facts proved. That
> done, the court must then deny the motion if reasonable persons could differ as to
> the conclusions to be drawn from the evidence.

Ryther, 108 F.3d at 844 (quotation and additional citations omitted).

### Security Interest in the 23 remaining pieces of JCB equipment

Union Planters Bank's first argument is that it is entitled to judgment as a matter of law

on JCB's claim for declaratory judgment,  based on its position that JCB *did not have* a security

interest in the 23 remaining pieces of JCB equipment.  If JCB did not have a security interest

then Union Planters Bank would be entitled to judgment in its favor.  This argument has

previously been made to this court and rejected.  United States Bankruptcy Judge McDonald

summarized the flaws in Union Planters Bank's argument in his second opinion on the subject:

> But, as illustrated in the [first] Summary Judgment Order, Union Planters'
> argument simply ignores Section 3.4.14.b of the Plan, which specifically recites
> that all of the pre-petition documents executed by Machinery shall remain in full
> force and effect post-confirmation. In fact, as more fully explained in the
> Summary Judgment Order, Section 3.7 of the Plan contemplates that pre-petition
> purchase money secured creditors would hold the senior liens on Machinery's
> post-confirmation assets. Additionally, there is nothing in the Plan that suggests
> that Section 3.4.14.b excluded Machinery's pre-petition financing agreements
> such as the JCB Financing Agreement or the JCB Security Agreement. And none
> of the cases cited by Union Planters involved language in a plan of reorganization
> that expressly preserved pre-petition liens with respect to the debtor's
> post-confirmation assets.

Machinery, 337 B.R. 368, 373 (Bankr. E.D. Mo. 2005).

Judge McDonald correctly analyzed Union Planters Bank's arguments and rejected them. I agree with Judge McDonald's analysis and will deny judgment as a matter of law on Union Planter's first ground.

**Trespass**

Union Planters Bank argues that it is entitled to judgment as a matter of law on JCB's claim for trespass. Union Planters Bank argues that it did not commit a trespass when the Bank entered property leased by JCB without JCB's permission and took possession of the 23 pieces of equipment.

Even if Union Planters Bank had been entitled to possession of the 23 pieces of equipment, Union Planters Bank cites no authority for the proposition that the Bank could enter upon a third party's real property to effect a repossession. Missouri law does not authorize entry onto a third party's property without consent of the third party, here JCB, to repossess collateral. See, e.g., Chrysler Financial Co. v. Flynn, 88 S.W.3d 142, 150 (Mo. App. 2002) ("Missouri law permits self-help repossession, including entry on a *debtor's* property without prior consent, so long as the creditor does not breach the peace.") (emphasis added); cf. R.S. Mo. § 400.9-609(a)(2) ("Without removal, [a secured party after default] may render equipment unusable and dispose of collateral on a *debtor's* premises under Section 400.9-610.") (emphasis added).

Even if Union Planters Bank had a senior security interest and the right to repossess the 23 pieces of equipment at issue in this case, it did not have a right to enter JCB's property to do so.

As a result, I will deny judgment as a matter of law on Union Planter's second ground.

**Compensatory Damages for Conversion**

Union Planters Bank argues that it is entitled to judgment as a matter of law on the issue of compensatory damages for conversion because there was no sufficient, substantial or competent evidence from which a reasonable jury could determine the fair market value of the equipment sold at auction. However, during three days of trial, the jury heard extensive testimony and reviewed documentary evidence regarding the fair-market value of the equipment. JCB presented two experts, C. Richard Ginder and Jon Morse, who testified regarding the value of the equipment at the time Union Planters Bank took possession of the equipment. Focusing on the value of the equipment to end users, Ginder determined that the equipment's fair-market value was $1,118,500. Morse testified that in his expert opinion the fair-market value of the equipment was $1,090,990.

Viewing the evidence in the light most favorable to the jury verdict, the jury's determination of the fair market value damages for conversion is supported by the evidence. I will therefore deny judgment as a matter of law on Union Planter's third ground.

**Punitive Damages**

Union Planters Bank argues that it is entitled to judgment as a matter of law because JCB's claim for punitive damages is barred because Union Planters Bank had a good faith belief that the Bank had a superior security interest in the equipment. Union Planters Bank is correct that good faith can be a defense to punitive damages. Union Planters Bank presented its evidence to the jury of its good faith belief that it was entitled to possession of the equipment. But simply presenting evidence that *might* support a finding of good faith does not bar the jury from disbelieving the testimony and finding the elements necessary to enter an award of punitive damages. Young v. Mercantile Trust Co., 598 S.W.2d 482, 483 (Mo. App. 1980) (in a

conversion case against a bank, holding that "jury was free, however, to believe or not believe appellant's evidence" of good faith).  The cases Union Planters Bank cites do not hold otherwise. The primary case relied upon, Walker v. Gateway Nat'l Bank, 799 S.W.2d 614, 617 (Mo. App. 1990), held not that evidence of good faith precludes punitive damages, but rather that the plaintiff presented no evidence of evil motive or reckless disregard for others' rights.

The jury was free to believe or disbelieve the evidence before it, and it had the particular duty to weigh and determine the facts.  See Fierstein v. DePaul Health Center, 24 S.W.3d 220, 225 (Mo. App. 2000) (jury may believe all, part, or none of the testimony presented, including evidence of good faith); Young, 598 S.W.2d at 483;  Jury Instr. No. 3.  In this case, the jury chose not to believe Korte's testimony that the bank acted in good faith.  After being properly instructed on the applicable standards for punitive damages and the burden of proof, the jury determined that Union Planters Bank's behavior warranted an award of punitive damages.

Viewing the evidence in the light most favorable to the jury verdict, I find that Union Planters Bank is not entitled to judgment as a matter of law on punitive damages.

**NEW TRIAL AND/OR REMITTITUR OF DAMAGES**

Union Planters Bank also challenges the jury's verdict on the amount of damages it awarded for conversion, pre-judgment interest, and punitive damages and asks me to order a new trial or reduce the amount of damages awarded by the jury.

**Legal Standard**

"[T]he prevention of injustice is the overriding principle in deciding whether to grant a new trial on the ground that the verdict was against the weight of the evidence."  Leichihman v. Pickwick Int'l, 814 F.2d 1263, 1267 (8th Cir. 1987).  Although the Court may consider the evidence and judge witnesses' credibility in considering a new-trial motion, it "may not usurp the

role of the jury by granting a new trial simply because it believes other inferences and conclusions are more reasonable." <u>Van Steenburgh v. Rival Co.</u>, 171 F.3d 1155, 1160 (8th Cir. 1999). The Court should grant a new trial "only if the jury's verdict was against the great weight of the evidence, so as to constitute a miscarriage of justice." <u>EFCO Corp. v. Symons Corp.</u>, 219 F.3d 734, 739 (8th Cir. 2000).

A decision to grant remittitur "is a procedural matter governed by federal, rather than state law." <u>Parsons v. First Investors Corp.</u>, 122 F.3d 525, 528 (8th Cir. 1997) (internal citation omitted). "[A]n opportunity to reduce the award as an alternative to a new trial might well be offered . . . wherever the trial judge is satisfied with the justness of the result on the question of liability." <u>Id.</u> at 529 (quoting McCormick, Damages § 19 (1935)).

### **Damages for Conversion**

Union Planters Bank argues it is entitled to a new trial because the jury's verdict awarding damages for conversion in the amount of $1,100,000 was against the weight of the evidence. However, as discussed above, during three days of trial, the jury heard extensive testimony and reviewed documentary evidence regarding the fair-market value of the equipment Union Planters Bank took from JCB's lot and sold at auction. JCB's experts, C. Richard Ginder and Jon Morse, testified as to the value of the equipment at the time Union Planters Bank converted them using different types of potential sales between willing buyers and willing sellers. The jury's determination of JCB's conversion damages is rational and consistent with the evidence, which included expert opinions of fair-market value *both* higher and lower than the jury's award of $1,100,000.

The jury's verdict in this matter awarding damages in the amount of $1,100,000, based on the fair market value of the equipment, is supported by the evidence.

Union Planters Bank also argues that the jury's award of compensatory damages for conversion must be remitted to the value received at the auction. Union Planters Bank argues that the unreserved auction is the *sole* determinant of fair-market value. "Fair market value is defined as the price that property will bring when it is offered for sale by an owner who is willing but under no compulsion to sell and is bought by a buyer who is willing and desired to purchase but is not compelled to do so." Bell v. Lafont Auto Sales, 85 S.W.3d 50, 54 (Mo. Ct. App. 2002). JCB presented the testimony of two separate experts, Mr. Grinder and Mr. Morse, who testified regarding the fair market value of the 23 pieces of equipment at the time Union Planters Bank converted them. Mr. Grinder testified regarding the dollar amount the equipment would have brought had they been sold by a dealer to the end user of the equipment. Mr. Morse testified regarding the dollar amount the equipment would have brought had the equipment been sold to a JCB dealer.

The jury was free to weigh the evidence of fair market value. Union Planter's Bank has not cited any authority that the jury is limited to the price received at the Bank's auction as a matter of law. The jury's verdict was supported by the evidence and I will therefore not remit the damages for conversion to the value received at auction.

### **Prejudgment Interest**

Union Planters Bank argues it is entitled to a new trial because the Court improperly instructed the jury on prejudgment interest and improperly permitted testimony relating to rates of interest other than that provided by law.

First, Union Planters Bank argues that my instruction of a rate of "9% per annum" was in error because it argues that the floating interest rate in R.S. Mo. § 408.040 applies in conversion cases. However, the law is clear that the interest rate to be applied in cases such as this is the

Missouri statutory rate of interest under R.S. Mo. § 408.020, which is 9%. R.S. Mo. § 408.020; Stromberg v. Moore, 170 S.W.3d 26, (Mo. App. 2005). In Stromberg, the Missouri Court of Appeals specifically considered and rejected the argument that Union Planters Bank now makes. Id. at 32 ("Stromberg argues that instead of applying Section 408.040, the trial court should have applied Sections 408.020 and 537.520 in awarding damages by way of interest. We agree."). The instruction to the jury on prejudgment interest was not in error.

Secondly, Union Planters Bank argues that I erred in refusing to give Union Planter's tendered language to inform the jury that they "may consider the good faith of Union Planters Bank in determining the date from which interest begins to run." Union Planters Bank argues that because it was acting in good faith at the time of the conversion, the jury should have been instructed on Union Planter's good faith. However, an instruction on interest need not include language regarding considerations of good faith in making the interest determination because good faith is not a sufficient reason for denying interest. Independence Flying Service, Inc. v. Ailshire, 409 S.W.2d 628, 631 (Mo. 1966). "If we deny interest defendant will have had the beneficial use of the property without payment, and plaintiff will have been denied the [right to use and derive profit or benefit from the property] thereof during all of that period of time." Id. at 632. Even had the good faith language been included in the jury instruction in the present case, such an instruction would not have changed the result because the jury's award of punitive damages makes it clear that the jury did not believe Union Planters Bank acted in good faith. Accordingly, my decision not to include any language regarding alleged good faith did not harm Union Planters Bank and it is not a basis for a new trial. Fed. R. Civ. P. 61.

Union Planters Bank argues that I improperly allowed testimony from JCB witnesses regarding JCB's ability to earn 12% on safe investments and 20% on one with some risk.

However, Union Planters Bank did not object to this testimony at trial and therefore failed to preserve any error related to this interest issue.

Union Planters Bank also argues that the jury's award of prejudgment interest for conversion must be remitted or a new trial granted because the award is excessive. Both Union Planters Bank and JCB argued the issue of prejudgment interest for conversion to the jury and the evidence presented at trial supported the jury's finding of prejudgment interest. Because the jury was properly instructed on prejudgment interest and the jury's verdict was supported by the evidence, I will not remit the damages or grant a new trial on the jury's award of prejudgment interest for conversion.

### Punitive Damages

Union Planters Bank argues that the jury's award of punitive damages for conversion and for trespass must be vacated and a new trial granted because the awards were excessive and unreasonable and against the weight of the evidence.

Punitive damages may be imposed to punish a defendant for its wrongful conduct, and to deter the defendant and others from committing similar wrongful acts. See, e.g., BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 568 (1996); MAI 10.01; DeLong v. Hilltop Lincoln-Mercury, Inc., 812 S.W.2d 834, 841 (Mo. App. 1991). Punishment and deterrence of outrageous conduct are important and legitimate state interests. See Gore, 517 U.S. at 568. Under Missouri law, when a defendant acts with an evil motive or reckless indifference to the rights of others in committing trespass or conversion, punitive damages should be awarded. See Wright, 619 S.W.2d at 803; Perkins v. Dean Machinery Co., 132 S.W.3d 295, 299-300 (Mo. App. 2004).

Due process requires a judicial review of punitive-damage awards, but "[o]nly when an award can fairly be categorized as 'grossly excessive' in relation to [a state's interests in

punishment and deterrence] does it enter the zone of arbitrariness that violates the Due Process Clause of the Fourteenth Amendment." <u>Gore</u>, 517 U.S. at 568. The Supreme Court has outlined three due-process "guideposts" for review of punitive-damage awards: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." <u>State Farm Mut. Auto. Ins. Co. v. Campbell</u>, 538 U.S. 408, 418 (2003). The most important of the guideposts is the reprehensibility of the defendant's conduct. <u>See</u> <u>Diesel Mach., Inc. v. B.R. Lee Indus., Inc.</u>, 418 F.3d 820, 839 (8th Cir. 2005).

Under Missouri law, punitive damages are allowed for the intentional tort of conversion and for the intentional tort of trespass to land. <u>See</u> <u>Dayton Constr., Inc. v. Meinhardt</u>, 882 S.W.2d 206, 209 (Mo. App. 1994); <u>see</u> <u>Wright v. Edison</u>, 619 S.W.2d 797, 803 (Mo. App. 1981). Punitive damages are appropriate where the evidence shows that the defendant's conduct was outrageous because it acted with an evil motive or reckless indifference to the rights of others. <u>See</u> MAI 10.01; <u>Dayton Constr.</u>, 882 S.W.2d at 209 ("Punitive damages are allowed in Missouri when the jury finds a defendant liable for conversion and also specifically finds that the conduct of the convertor was outrageous because of his evil motive or reckless indifference to the rights of others."); <u>Wright</u>, 619 S.W.2d at 803 ("If a trespass is intentional and done without cause or excuse, it is willful and warrants a submission of punitive damages. This is true even though a person acts under a mistaken belief or [sic] law or fact, however reasonable…").

Upon a review of the record, I find that the jury verdict was supported by the evidence.

JCB argues that Union Planters Bank's trespass and conversion, and the circumstances surrounding them, should be considered as a whole in reviewing the punitive damages awarded,

based on the bank's single course of wrongful conduct.  I agree. Union Planters Bank's unlawful trespass and conversion are inextricably intertwined because Union Planters Bank trespassed upon JCB's lot for the sole purpose of taking possession of JCB's equipment.  I therefore find that even though the punitive damage award for trespass taken separately from the punitive damage award for conversion could arguably offend recent Supreme Court cases, in considering the punitive damage awards in this case, the punitive damage awards for conversion and trespass must be considered together.   A sophisticated jury was clearly offended by Union Planters Bank's conduct.

Considered in the aggregate, the jury's award of $2.24 million in punitive damages compared with $1.45 million in actual damages is easily within constitutional limits.  In Diesel Mach., the Eighth Circuit approved a ratio of punitive damages to actual damages of 4 to 1 even though the only harm to the plaintiff was economic, the wrongful conduct did not jeopardize health or safety, and the plaintiff was not financially vulnerable.  Diesel Mach., 418 F.3d at 839-40.  In Eden Elec., Ltd. v. Amana Co., 370 F.3d 824, 829 (8th Cir. 2004), which involved a purely commercial dispute and essentially economic harm under a single contractual relationship, a ratio of punitive to actual damages of 4.5 to 1 was found consistent with due process.  Id.  Due process requires simply that "the measure of punishment is both reasonable and proportionate to the amount of harm to the plaintiff and to the general damages recovered."  State Farm, 538 U.S. at 426.  In this case, the jury's punitive damages award of less than twice the actual damages was both reasonable and proportionate, considering the egregious nature of Union Planters Bank's conduct.

Finally, the final guidepost–the difference between punitive damages awarded by the jury and the civil penalties authorized or imposed in other cases–also supports the punitive damage

award.  Union Planters Bank cites R.S. Mo. § 560.021.1(3) to support its argument that the

maximum fine for criminal trespass in the first degree is $2,000.  However, that same statute also

provides that a corporation may be fined "[a]ny higher amount not exceeding double the amount

of the corporation's gain from the commission of the offense."  R.S. Mo. § 560.021.1(6).  Thus,

the statute permits punishment at a multiple of two times the value of the property taken.  Union

Planters Bank also neglects to mention that individuals found guilty of similar conduct face

imprisonment of up to 15 years, reflecting the strong interest in punishing such behavior under

Missouri law.  See R.S. Mo. §§ 570.030.7, 558.011.1(2).  The punitive damages awarded by this

jury are in line with other penalties for similar conduct.

Therefore, I find that the punitive damages awarded by the jury in this case are not

violative of due process.

### Testimony of Paul Lerman, Larry Broadley and David Kopp

Union Planters Bank argues that the I erred by excluding the testimony of Paul Lerman

regarding his opinion that the fair market value of the equipment at issue was equal to the auction

proceeds. Union Planters Bank also argues that I erred by excluding the testimony of Larry

Broadley, JCB's Remarketing Director, regarding his opinion that the fair market value of the

equipment at issue was only $608,000. Finally, Union Planters Bank argues that I erred by

excluding the testimony of David Kopp regarding his opinion that JCB could have received the

same by selling the equipment  at issue to its dealers as it did from the auction.

These witnesses were all excluded based upon my rulings on motions *in limine*.

However, Union Planters Bank did not make an offer of proof as to the testimony of any of these

witnesses, all of whom took the stand and addressed other issues. The Eighth Circuit has held

that  "'[e]ven if an issue is raised pre-trial . . . an attorney must make an offer of proof during the

trial in order to preserve the issue for appeal.'" United States v. Echols, 346 F.3d 818, 820 (8th Cir. 2003) (quoting United States v. Kirkie, 261 F.3d 761, 767 (8th Cir. 2001)). The purpose of the offer of proof is to allow both the trial court and the appellate court on review to ascertain whether excluding the evidence caused any prejudice to the appellant. Strong v. Mercantile Trust Co., N. A., 816 F.2d 429, 432 (8th Cir. 1987); Fed. R. Civ. P. 61 ("No error in … the exclusion of evidence … is ground for granting a new trial … unless refusal to take such action appears to the court inconsistent with substantial justice."). Union Planters Bank's failure to make offers of proof has precluded the Court from now reaching any reasoned conclusion that the exclusion of the evidence materially prejudiced Union Planters Bank. Yost v. A. O. Smith Corp., 562 F.2d 592, 595 (8th Cir. 1977) ("[W]ithout an offer of proof, we have no way of knowing whether the excluded evidence would have been helpful or harmful to appellants.").

Additionally, I excluded Mr. Lerman's testimony because Mr. Lerman was not designated as an expert witness. Union Planters Bank argues that Mr. Lerman's testimony was still admissible under Federal Rule of Evidence 701, which deals with opinion testimony by lay witnesses. "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "Although the trial court has broad discretion to admit lay opinions, that discretion may be exercised only after the court finds 'that the witness'[s] testimony is based upon his or her personal observation and recollection of concrete facts …,and that those facts cannot be described in sufficient detail to adequately convey to the jury the substance of the testimony.'" United States v. Peoples, 250

F.3d 630, 639 (8th Cir. 2001) (quoting Wactor v. Spartan Transp. Corp., 27 F.3d 347, 350 (8th Cir. 1994) (internal quotations omitted)). Mr. Lerman was permitted to testify as to what he did, what he observed and other similar factual matters. Any testimony beyond the bounds of his factual involvement in this dispute would have exceeded the testimony permitted under Rule 701 and tread into expert witness testimony under Rule 702. The resulting limitation on Mr. Lerman's testimony was appropriate under the Federal Rules of Evidence.

I also excluded Mr. Broadley's testimony and Mr. Kopp's testimony on the grounds that neither witness was designated as an expert witness. Union Planters Bank challenges this ruling on the basis that both Mr. Broadley's and Mr. Kopp's testimony was admissible as that of a lay witness under Federal Rule of Evidence 701. However, testifying to the fair market value of the equipment sold at auction is not a lay opinion. The limitation on Mr. Broadley's and Mr. Kopp's testimony was also appropriate under the Federal Rules of Evidence.

I find that my rulings to exclude the testimony of these three witnesses were not in error.

**Lack of Jury Instruction Regarding Absence of David Moore**

Union Planters Bank argues that I erred by failing to instruct the jury regarding the absence of Union Planter's expert David Moore. On the eve of trial, Mr. Moore informed Union Planters Bank that he was not willing to testify live because the relationship of his company with JCB had changed considerably and his testimony would be a conflict of interest. Union Planters Bank argues that its proffered instruction regarding Mr. Moore's absence would have put his opinion and absence from trial in the proper context and kept the jury from discounting his testimony.

I resolved the pre-trial motions with respect to Moore by allowing his testimony to be read into the record, by granting Union Planters Bank's motion to prevent JCB from commenting

on his non-appearance, and by giving the customary instruction that deposition testimony is entitled to the jury's consideration. These actions avoided prejudice to Union Planters Bank.

My ruling not to instruct the jury regarding the absence of Union Planter's expert David Moore was not in error.

### Lack of Jury Instruction Regarding UCC §9-609

Union Planters Bank argues that the District Court erred by failing to instruct the jury regarding Uniform Commercial Code Section 9-609. Union Planters Bank's tendered instruction regarding UCC §9-609 was a seriously incomplete statement of the law. The proposed instruction read as follows:

> A secured party, upon default, has the right to take possession of collateral without judicial process, if it proceeds without a breach of the peace, and may sell or otherwise dispose of the collateral in its present condition, even if it holds a security interest inferior to that of another secured party.

This proposed instruction is misleading and is not consistent with Judge McDonald's opinion on summary judgment. See Machinery, 337 B.R. at 375.

As Judge McDonald held in his opinion:

> The proper analysis must focus on the fact that Article 9 provides a *senior* secured creditor with the superior right to possess the collateral. Thus, once the *senior* secured creditor demands that a *junior* secured creditor deliver the collateral to it, the *junior* creditor has a duty to comply with the demand. See e.g. Color Leasing 3, L.P. v. FDIC, 975 F. Supp. 177, 188 (D.R.I. 1997). If the *junior* secured creditor refuses the senior secured creditor's demand to return the collateral, the *junior* creditor is liable in conversion to the senior. Id. This is the result even if the *junior* creditor had a good faith belief that it possessed the *senior* lien on the collateral in questions. Hill v. Farm Credit Bank, 726 F. Supp. 1201, 1209-10 (E.D. Mo. 1989). And the Official Comments to Revised Article 9 explicitly state that a *junior* secured creditor who refuses to surrender possession of collateral to a *senior* secured creditor upon the *senior's* demand is liable in conversion to the senior. Mo. Rev. Stat. § 400.9-609, Official Comment 5.

Machinery, 337 B.R. at 375 (emphasis added).  Here, JCB possessed the senior security interest in the collateral, the 23 remaining pieces of equipment.  Therefore, Union Planter's preferred instruction on UCC §9-609 was a seriously misleading and incomplete statement of the law.

The jury was properly instructed on the law and not giving this proposed instruction was appropriate.

### Testimony of C. Richard Ginder

Union Planters Bank argues that I erred by permitting testimony from JCB's expert, C. Richard Ginder, because Mr. Ginder's testimony related only to the value of the equipment to end users and was, therefore, irrelevent.  Mr. Grinder testified that if JCB had been able to sell the equipment through its own network of end users, it could have commanded a higher price than was possible through an auction.  Specifically, Mr. Grinder opined that JCB could have received $279,500 in additional gross revenue if the equipment had been sold through JCB's dealer network to end users.  Union Planters Bank argues that this testimony was irrelevant because it "was based on the fundamentally false assumption the JCB would have recovered the retail price, rather than the wholesale price, of the equipment" when Union Planters Bank asserts that the evidence at trial supported the assumption that JCB anticipated selling the equipment to its dealers, not the end users, and would therefore only recover the wholesale price.  This argument is nothing more than an attack on the weight of the evidence Mr. Ginder provided.  Union Planters Bank had the opportunity to cross-examine Mr. Grinder is an effort to discredit Mr. Ginder's opinion testimony and show that JCB may have been contemplating sale methods different from those considered by Mr. Grinder.  As with all other evidence, the jury was free to believe or disbelieve the expert testimony as it saw fit.

My ruling to permit testimony from JCB's expert, C. Richard Ginder, was not in error.

### Testimony of Jon Morse

Union Planters Bank argues that I erred by permitting the testimony from JCB's rebuttal expert, Jon Morse. Union Planters Bank claims Mr. Morse was not asked to render an opinion about Union Planters Bank's experts; however, JCB rebuts this argument by stating that JCB's counsel advised Union Planters Bank's counsel during a break in Mr. Morse's deposition that JCB's counsel asked Mr. Morse to address the work of Union Planters Bank's experts.

Union Planters Bank also argues that Mr. Morse's testimony did not actually rebut Union Planters Bank's experts' testimony. "The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party." Marmo v. Tyson Fresh Meats, 457 F.3d 748, 759 (8th Cir. 2006) (quoting United States v. Lamoreaux, 422 F.3d 750, 755 (8th Cir. 2005) (citation omitted)). Mr. Morse's testimony does all these things because it addressed, in response, the fair-market value of the converted equipment, which was the same issue as Union Planters Bank's expert, Mr. Funke.

In addition to pointing out why Mr. Funke's opinion of value was wrong, Mr. Morse explained how to correctly go about determining the price a willing buyer would pay a willing seller for the equipment at issue. Mr. Morse's expert report and testimony were appropriate and helpful to the jury and did not unfairly prejudiced Union Planters Bank in any way.

My ruling to permit testimony from JCB's rebuttal expert, Jon Morse, was not in error.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Union Planters Bank's Motion for

Judgment as a Matter of Law, for New Trial and/or to Remit Damages [#86] is **DENIED**.


_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 9th day of August, 2007.